

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*[signature]*

**United States Bankruptcy Judge**

**Signed July 18, 2012**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | CASE NO. 12-31549-bjh-11 |
| CANO PETROLEUM, INC., ET AL. | § | JOINTLY ADMINISTERED |
| | § | |
| Debtors. | § | (CHAPTER 11) |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF (I) SECOND AMENDED JOINT PLAN OF REORGANIZATION AND (II) SALE MOTION
[Relates to Dkt. Nos. 13 and 283]

Having considered the *Second Amended Joint Plan of Reorganization* (the "Plan")[1] and the *Motion to (A) Approve the Stock Purchase Agreement and Authorize the Debtors to Enter Into the Stock Purchase Agreement and Comply with Their Obligations Thereunder; (B) Approve a Break-Up Fee in Connection with the Transaction Contemplated by the Stock Purchase Agreement; (C) Approve the Procedures for the Solicitation of Higher or Better Offers; (D) Approve the Form and Manner of Notice; (E) Approve Procedures for Determining Cure*

---

[1] Dkt. No. 283. Unless otherwise indicated, all capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

*Amounts for Executory Contracts and Unexpired Leases; and (F) Grant Related Relief* (the "Sale Motion"),[2] filed by the Debtors[3]; this Court having conducted a combined evidentiary hearing (the "Combined Hearing") to consider (a) confirmation of the Plan (the "Confirmation Hearing") and (b) approval of the Sale Motion (the "Sale Hearing"); and this Court having considered:

      (i)     the testimony of the witnesses of the Debtors, the Pre-Petition Secured Lenders, and the Purchaser proffered and/or called at the Combined Hearing;

      (ii)    the exhibits of the Debtors, the Pre-Petition Secured Lenders, and the Purchaser admitted into evidence at the Combined Hearing;

      (iii)   the arguments of counsel and other parties-in-interest presented at the Combined Hearing;

      (iv)   the objections filed or asserted with respect to Confirmation of the Plan and/or the Sale Motion (collectively, the "Objections");

      (v)    the testimony of the witnesses and exhibits, if any, offered in support of the Objections;

      (vi)   the resolution and settlement of the Objections;

      (vii)  the *Plan Supplement*[4]; and

      (viii) the pleadings and other documentation filed by the Debtors in support of the Plan, including:

      A.  The *Amended Declaration of Balloting Agent Regarding the Tabulation of Votes With Respect To the Second Amended Joint Plan of Reorganization* (the "Voting Certification")[5];

      B.  The Debtors' *Notice of Resolution of Certain Confirmation and Sale Objections and Response to Single Remaining Objection of Purported Shareholders*[6]; and

      C.  The Debtors' *Brief in Support of Confirmation of the Second Amended Joint Plan of Reorganization* and *Sale Motion* (the "Confirmation Brief")[7]; and

---

[2] Dkt. No. 13.

[3] The Debtors include Cano Petroleum, Inc., Cano Petro of New Mexico, Inc., Ladder Companies, Inc., Square One Energy, Inc., W.O. Energy of Nevada, Inc., W.O. Operating Company, Ltd., W.O. Production Company, Ltd., and WO Energy, Inc. For the reasons described on the record at the Combined Hearing and included in the *Amended Motion of Tri-Flow, Inc. to Dismiss Chapter 11 Petition* [Dkt. No. 347], the Debtors are not seeking confirmation of the Plan as to Tri-Flow.

[4] Dkt No. 301.

[5] Dkt. No. 342.

[6] Dkt. No. 355.

[7] Dkt. No. 350.

This Court having taken judicial notice of and considered the docket in these Chapter 11 Cases; this Court being familiar with the Transaction and the Plan and other relevant factors affecting these Chapter 11 Cases pending under the Bankruptcy Code; this Court having found that due and proper notice has been given with respect to the Combined Hearing and the deadlines and procedures for filing objections to the Plan and Transaction; the appearance of all interested parties having been duly noted in the record of the Combined Hearing; and upon the record of the Combined Hearing (which is incorporated herein by reference), and after due deliberation thereon, and sufficient cause appearing therefor; the Court hereby makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## JURISDICTION AND VENUE

A. _Jurisdiction_. The Bankruptcy Court has jurisdiction over this matter and these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.

B. _Core Proceeding_. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), including those set forth in subsections (b)(2)(A), (B), (C), (F), (G), (H), (K), (L), (M), (N), and (O). This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

C. _Venue_. Venue is proper in this district and division pursuant to 28 U.S.C. §§ 1408 and 1409 and the Bankruptcy Local Rules.

D. _Debtors' Eligibility_. Each of the Debtors was on the Petition Date and is eligible to be a debtor under Bankruptcy Code § 109, and the Debtors are proper proponents of the Plan under Bankruptcy Code § 1121(a). The Chapter 11 Cases were filed in good faith and not for any improper purpose.

E. _Conditions Precedent_. Each of the conditions precedent to the entry of this Confirmation Order has been satisfied in accordance with Article XII of the Plan or properly waived in accordance with Article XII of the Plan.

## NOTICE, SOLICITATION OF ACCEPTANCE

F. _Service of Solicitation Materials and Notices_. In accordance with the _Order (A) Approving (I) Second Amended Joint Disclosure Statement for the Second Amended Joint Plan of Reorganization, (II) Form of Ballots and Solicitation, Voting and Balloting Procedures, and (III) Form and Manner of Notice Thereof; (B) Scheduling Dates for the Objection Deadline; and Hearing Relating to Confirmation of the Plan; and (C) Authorizing_

*Other Relief Relating to Plan Solicitation and Plan Confirmation Process* (the "Disclosure Statement Order")[8], Bankruptcy Code § 1125 and Bankruptcy Rule 3017(d), all appropriate pleadings, notices, and Ballots were transmitted, mailed, or published, as evidenced by the *Certificate of Service* (the "Solicitation Service Certificate").[9] No other or further transmittal, mailing or publication is necessary or shall be required.

G.      **Service on Holders of Unclassified Claims.**   On or before the Mailing Deadline, the Debtors timely and properly served via First Class United States Mail: (1) the Disclosure Statement Order, (2) the *Notice of the (I) Deadline to Objections to the Second Amended Joint Plan and (II) Confirmation Hearing* (the "Confirmation Hearing Notice")[10], (3) the Summary Plan and Disclosure Statement, (4) the Unimpaired Claims Notice, and (5) *Notice of Extended Sale Transaction Objection Deadline and Rescheduled Combined Hearing Notice* (the "Combined Hearing Notice")[11] on all Holders of Administrative Claims and Priority Tax Claims, as evidenced by the Solicitation Service Certificate.

H.      **Service on Holders of Unimpaired Claims.**   On or before the Mailing Deadline, the Debtors timely and properly served via First Class United States Mail: (1) the Disclosure Statement Order, (2) the Confirmation Hearing Notice, (3) the Summary Plan and Disclosure Statement, (4) the Unimpaired Claims Notice, and (5) the Combined Hearing Notice on all Holders of Priority Non-Tax Claims (Classes A1, B1, C1, D1, F1, G1, H1 and I1), Miscellaneous Secured Claims (Classes A4, B4, C4, D4, F4, G4, H4, and I4) and Royalty Claims (Classes B7, C7, D7, and G7), as evidenced by the Solicitation Service Certificate.

I.      **Service on Holders of Non-Voting Impaired Claims.**   On or before the Mailing Deadline, the Debtors timely and properly served via First Class United States Mail: (1) the Disclosure Statement Order, (2) the Confirmation Hearing Notice, (3) the Summary Plan and Disclosure Statement, (4) the Impaired Non-Voting Class Notice, and (5) the Combined Hearing Notice on all Holders of Intercompany Claims (Classes A6, B6, C6, D6, F6, G6, H6, and I6), Preferred Stock (Class A7), and Interests (Classes A8, B8, C8, D8, F7, G8, H7, and I7), as evidenced by the Solicitation Service Certificate.

J.      **Service on Holders of Voting Impaired Claims.**   On or before the Mailing Deadline, the Debtors properly served via First Class United States Mail a Solicitation Package[12] on all Holders of Voting Impaired Claims; Senior Secured Claims (Classes A2, B2, C2, D2, F2 G2, H2, and I2); UBE Junior Secured Claims (Classes A3, B3, C3, D3, F3, G3, H3, and I3); and General Unsecured Claims (Classes A5, B5, C5, D5, F5, G5, H5, and I5), as evidenced by the Solicitation Service Certificate.

---

[8] Dkt. No. 288.
[9] Dkt. No. 310.
[10] Dkt. No. 293.
[11] Dkt. No. 294.
[12] As defined in the *Motion to (A) Approve (I) Joint Disclosure Statement for the Joint Plan of Reorganization, (II) Form of Ballots and Solicitation, Voting and Balloting Procedures; and (III) Form and Manner of Notice Thereof; (B) Schedule Dates for the Objection Deadline; and Hearing Relating to the Confirmation of the Plan; and (C) Authorize Other Relief Relating to Plan Solicitation and Plan Confirmation Process* (the "Disclosure Statement Motion") [Dkt. No. 157].

## ADEQUATE NOTICE OF CONFIRMATION AND SALE

K.     _Sale Notice_.  On April 19, 2012, the Debtors Filed and served on all Holders of Claims and Interests and other parties-in-interest the _Notice of (I) The Terms and Conditions of the Transaction; (II) Deadline for Filing Objections to the Transaction; and (III) Date of the Combined Hearing; and (IV) Date of the Auction_ (the "_Sale Notice_").[13]  As evidenced by the _Affidavit of Publication in the Wall Street Journal_ regarding the Sale Notice,[14] the Debtors published the Sale Notice in _The Wall Street Journal_ on April 27, 2012.  No other or further notice of the Sale Notice is necessary or required.

L.     _Notice of Plan Supplement_.  On June 29, 2012, the Debtors Filed the Plan Supplement[15] containing: (i) the Reorganized Debtors' Governance Documents; (ii) the Liquidating Trust Agreement; and (iii) the Identity of Officers and Directors of Reorganized Debtors.  The Debtors also served the Plan Supplement on the Consolidated Master Service List.  No other or further notice of the Plan Supplement is necessary or shall be required.

M.     _Plan Documents Availability_.  In compliance with the Disclosure Statement Order, the Debtors made the Sale Notice, the Confirmation Hearing Notice, Combined Hearing Notice, the Disclosure Statement Order, and the Disclosure Statement, together with the exhibits thereto (including the Plan and the Plan Supplement) available at www.bmcgroup.com/cano (the "_BMC Website_").

N.     _Notice of Combined Hearing and Voting Deadline_.  In accordance with Bankruptcy Rules 2002, 3018, 6004, 6006, 9007, and 9014, the Local Rules of the Bankruptcy Court, and the Disclosure Statement Order, adequate notice of (1) the deadline for voting on or objecting to the Plan; (2) the deadline to object to the Sale Motion; (3) the Combined Hearing; and (4) the deadline to object to the assumption of executory contracts and unexpired leases and related Cure Costs was provided to all Holders of Claims and Interests, counter-parties to the Desired 365 Contracts, and other parties-in-interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules.  No other or further notice of the Combined Hearing or Confirmation of the Plan is necessary or required.

O.     _Good Faith Solicitation (11 U.S.C. § 1125(e))_.  Based on the record, the Debtors and their respective directors, officers, employees, managers, members, attorneys, affiliates, agents, and professionals (including but not limited to their attorneys, financial advisors, investment bankers, accountants, solicitation agents, and other professionals that have been retained by such parties) have acted in "good faith" within the meaning of Bankruptcy Code § 1125(e) and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and applicable non-bankruptcy law in connection with all of their respective activities relating to (1) solicitation of acceptances or rejection of the Plan; (2) the offer/sale, issuance and distribution of the New Interests under the Plan; and (3) their participation in other activities described in Bankruptcy Code § 1125.  Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with Bankruptcy Code §§ 1125 and 1126,

---

[13] Dkt. No. 185.
[14] Dkt. No. 240.
[15] Dkt. No. 321.

Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, and all other applicable provisions of the Bankruptcy Code and other applicable rules, laws, and regulations. Additionally, the Solicitation, Voting, and Balloting Procedures[16] used to distribute the Solicitation Packages (as defined in the Disclosure Statement Order) to Holders of Claims were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the local bankruptcy rules, and other applicable rules, laws, and regulations. Therefore, the Debtors and their respective directors, officers, employees, managers, members, attorneys, affiliates, agents, and professionals are entitled to the full protections afforded by Bankruptcy Code § 1125(e).

## COMPLIANCE WITH THE STANDARDS FOR CONFIRMATION UNDER SECTION 1129 OF THE BANKRUPTCY CODE

P.     _Burden of Proof._  Each of the Debtors, as a proponent of its Plan, has satisfied its burden of proving the standards of Bankruptcy Code §§ 1129(a) and 1129(b) by a preponderance of the evidence.

Q.     _Bankruptcy Rule 3016(a)._  The Plan constitutes eight separate plans of reorganization with respect to each of the Debtors other than Tri-Flow. The Plan is dated and identifies the Debtors as the plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

R.     _Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))._  The Plan complies with each applicable provision of the Bankruptcy Code. In particular and as set forth below, the Plan complies with the requirements of Bankruptcy Code §§ 1122 and 1123,[17] thereby satisfying Bankruptcy Code § 1129(a)(1).

(i)     _Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))._  The Plan in respect of each of the Debtors complies with the classification requirements of the Bankruptcy Code. Classification of claims and interests are governed by Bankruptcy Code § 1122, which provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[18] This section does not require that the claims or interests within a particular class be identical.[19] A Plan proponent has flexibility in classifying claims, so long as the proponent has some reasonable basis for the classification or the creditor agrees to it.[20] In

---

[16] _See_ Disclosure Statement, Ex. I [Dkt. No. 284-9].

[17] _See_ S. Rep. No. 989, 95th Cong., 2d Sess. 126, reprinted in 1978 U.S.C.C.A.N. 5787, 5912 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess. 412, reprinted in 1978 U.S.C.C.A.N. 5963, 6368 (1977); _see also In re Johns Manville Corp._, 68 B.R. 618, 629-30 (Bankr. S.D.N.Y. 1986), _as modified_, 78 B.R. 407 (S.D.N.Y. 1987), _aff'd_, 843 F.2d 636 (2d Cir. 1988) ("Objections to confirmation raised under § 1129(a)(1) generally involve the failure of a plan to conform to the requirements of § 1122(a) or § 1123.").

[18] 11 U.S.C. § 1122(a).

[19] _In re DRW Property Co._, 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986); _see also Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)_, 995 F.2d 1274, 1278-79 (5th Cir. 1991) ("A fair reading of both subsections [of section 1122] suggests that ordinarily 'substantially similar claims,' those which share common priority and rights against the debtor's estate, should be placed in the same class").

[20] _See In re Jersey City Med. Center_, 817 F.2d 1055, 1060-61 (3d Cir. 1987) ("Congress intended to afford bankruptcy judges broad discretion [under section 1122 of the Bankruptcy Code] to decide the propriety of plans in light of the facts of each case."). A plan proponent cannot "classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan," but there may be good business reasons to support

---

accordance with Bankruptcy Code § 1122(a), Article III of the Plan classifies each Claim against and Interest in each of the Debtors into separate classes for each Debtor. The Plan's classification scheme is reasonable because it is based on the respective legal rights of each holder of a Claim or Interest and/or the priorities set forth in the Bankruptcy Code. The classifications were not proposed to create a consenting impaired class or to manipulate class voting. As a result of the foregoing, the Plan satisfies the requirements of Bankruptcy Code §§ 1122 and 1123(a)(1).

(ii) <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. In accordance with Bankruptcy Code § 1123(a)(2), Article III and Article IV of the Plan properly identify Priority Non-Tax Claims (Classes A1, B1, C1, D1, F1, G1, H1 and I1), Miscellaneous Secured Claims (Classes A4, B4, C4, D4, F4, G4, H4, and I4), and Royalty Claims (Classes B7, C7, D7, and G7) as Unimpaired under the Plan.

(iii) <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. In accordance with Bankruptcy Code § 1123(a)(3), Articles III and IV of the Plan properly identify and describe the treatment of Impaired Classes: Intercompany Claims (Classes A6, B6, C6, D6, F6, G6, H6, and I6), Preferred Stock (Class A7), Interests (Classes A8, B8, C8, D8, F7, G8, H7, and I7), Senior Secured Claims (Classes A2, B2, C2, D2, F2, G2, H2, and I2), UBE Junior Secured Claims (Classes A3, B3, C3, D3, F3, G3, H3, and I3), and General Unsecured Claims (Classes A5, B5, C5, D5, F5, G5, H5, and I5).

(iv) <u>Same Treatment (11 U.S.C. § 1123(a)(4))</u>. In accordance with Bankruptcy Code § 1123(a)(4), the Plan provides the same treatment for each Claim or Interest of a particular Class unless the Holder of such a Claim or Interest has agreed to less favorable treatment. Valid business, legal, and factual reasons exist for the separate classifications of each of these Classes of Claims and Interests, and there is no unfair discrimination or gerrymandering between or among the Holders of Claims and Interests.

(v) <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. In accordance with Bankruptcy Code § 1123(a)(5), the Plan provides proper and adequate means for its implementation, including, without limitation: (i) the sale of the New Interests to the Purchaser; (ii) the deemed consolidation of the Debtors only for purposes of Distributions under the Plan; (iii) the establishment of the Liquidating Trust and the appointment of the Liquidation Trustee; (iv) the vesting of the Vesting Assets in the applicable Reorganized Debtor; (v) transfer of the Liquidating Trust Assets to the Liquidating Trust; (vi) the

---

separate classification. *Heartland Fed. Savings & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd.)*, 994 F.2d 1160, 1167 (5th Cir. 1993) (quotations omitted); *see also In re The Heritage Org., L.L.C.*, 375 B.R. 230, 288 (Bankr. N.D. Tex. 2007) ("Substantially similar claims must be classified together unless some reason, other than gerrymandering, exists for separating them").

[20] *See* COLLIER ON BANKRUPTCY, ¶ 1122.03[4][c]; COLLIER ON BANKRUPTCY, ¶ 1111.03[2][a] ("Mechanics lienors may also comprise such a class" of claims.); *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2nd Cir. 1993) (holding the debtors had a rational basis for classifying indemnity claims secured by letters or credit or surety bonds separately from an unsecured indemnity claim); *In re Mid-State Raceway, Inc.*, 343 B.R. 21 (Bankr. N.D.N.Y. 2006) (holding creditors asserting mechanics' liens must be classified together as there was no business justification for classifying them separately); *In re Dupell*, No. 99-10561DWS, 2000 WL 192972 (Bankr. E.D. Pa. Feb. 15, 2000) (classifying secured mortgages on nine different properties into five classes based on whether the property securing the mortgages was rental or nonrental income).

establishment and funding of the Distribution Reserve Accounts; (vii) Distributions to Holders of Allowed Claims on the Effective Date as provided for in Article IV of the Plan; and (viii) the provisions regarding post-Effective Date corporate governance and other actions. Moreover, the Liquidating Trust and the Reorganized Debtors will have, immediately upon the Effective Date, sufficient Cash to make all payments required to be made on the Effective Date pursuant to the terms of the Plan.

(vi)     <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. Pursuant to Section 6.13 of the Plan and in accordance with Bankruptcy Code § 1141(d)(1), on the Effective Date, (i) all of the Interests in the Debtors (including all Interests of the Debtors held in treasury by any Debtor immediately before the Effective Date) and all rights of the Holders of Interests of the Debtors therein; (ii) all certificates that previously evidenced those Interests; and (iii) all other agreements heretofore binding upon the Debtors or the Acquired Property shall be deemed to be terminated, cancelled, extinguished, void, and of no further force or effect in accordance with the Plan, without any action by the Holders of such Interests of Debtors, and no consideration shall be paid or delivered with respect thereto. Therefore, the Plan appropriately provides for the offer, sale, issuance and distribution of the New Interests pursuant to the Plan pursuant to Bankruptcy Code § 1123(a)(6).

(vii)    <u>Designation of Director, Officer, and Trustee (11 U.S.C. § 1123(a)(7))</u>. In accordance with Bankruptcy Code § 1123(a)(7), the provisions of the Plan, the Plan Supplement, and the Liquidating Trust Agreement, the officers and directors of the Reorganized Debtors are identified and the manner of selection of the Liquidating Trustee is consistent with the interests of creditors and equity security holders and with public policy. The Liquidating Trustee has been selected with the agreement and consent of the Pre-Petition Secured Lenders.

(viii)   <u>Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1))</u>. In accordance with Bankruptcy Code § 1123(b)(1), the Plan Impairs or leaves Unimpaired, as the case may be, each Class of Claims and Interests. Priority Non-Tax Claims (Classes A1, B1, C1, D1, F1, G1, H1, and I1), Miscellaneous Secured Claims (Classes A4, B4, C4, D4, F4, G4, H4, and I4), and Royalty Claims (Classes B7, C7, D7, and G7) are Unimpaired. Intercompany Claims (Classes A6, B6, C6, D6, F6, G6, H6 and I6), Preferred Stock (Class A7), Interests (Classes A8, B8, C8, D8, F7, G8, H7, and I7), Senior Secured Claims (Classes A2, B2, C2, D2, F2, G2, H2, and I2), UBE Junior Secured Claims (Classes A3, B3, C3, D3, F3, G3, H3, and I3), and General Unsecured Claims (Classes A5, B5, C5, D5, F5, G5, H5, and I5) are Impaired under the Plan.

(ix)    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>. In accordance with Bankruptcy Code § 1123(b)(2) and pursuant to Article X of the Plan, on the Effective Date, all of the Debtors' executory contracts and unexpired leases identified as Desired 365 Contracts will be assumed. Pursuant to the Bid Procedures Order, the Plan, and the Purchase and Sale Agreement, the Debtors have provided notice of the Desired 365 Contracts and a supplemental list of same. All executory contracts and unexpired leases that are not listed as a Desired 365 Contract will be rejected as of the Effective Date. The Debtors' decisions pursuant to the

Plan regarding the rejection and assumption of executory contracts and unexpired leases are based on sound business judgment, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties-in-interest in these Chapter 11 Cases.

(x)    Settlement of Claims/Retention of Causes of Action (11 U.S.C. § 1123(b)(3)).  In accordance with Bankruptcy Code § 1123(b)(3), Section 6.17 of the Plan provides for certain settlements, exculpations and limitations of liability, and injunctions, as well as for the retention of causes of action.

(xi)    Transfer of Remaining Assets to Liquidating Trust (11 U.S.C. § 1123(b)(4).  In accordance with Bankruptcy Code § 1123(b)(4), the Plan provides for the transfer of the Liquidating Trust Assets to the Liquidating Trust to effectuate the orderly liquidation of such assets and the distribution of the proceeds thereof to Holders of Allowed Claims as provided in the Plan and the Liquidating Trust Agreement.

(xii)    Modification of Claimholders' Rights (11 U.S.C. § 1123(b)(5)).  In accordance with Bankruptcy Code § 1123(b)(5), the Plan modifies or leaves unaffected, as the case may be, the rights of Holders of Priority-Non Tax Claims, Miscellaneous Secured Claims, and Royalty Claims (collectively, the "Unimpaired Classes").  No such Claim is secured by a security interest in real property that is a Debtor's primary residence.

(xiii)    Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).  In accordance with Bankruptcy Code § 1123(b)(6), the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code.

(xiv)    Cure of Defaults (11 U.S.C. § 1123(d)).  In accordance with Bankruptcy Code § 1123(d), Section 10.2 of the Plan provides for the satisfaction of Cure Costs associated with the Desired 365 Contracts to be assumed pursuant to the Plan in accordance with Bankruptcy Code § 365.  The total Cure Costs associated with the assumption of the Desired 365 Contracts is $85,639.90 payable to Midwest Compressor Systems L.L.C. and $48,239.66 payable to Optimal Solutions, Inc.  All other Cure Costs under the Desired 365 Contracts are equal to $0.00.

S.    The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtors have complied with the applicable provisions of the Bankruptcy Code (including Bankruptcy Code §§ 1122, 1123, 1124, 1125, 1126, and 1128), the Bankruptcy Rules (including Bankruptcy Rules 3017, 3018, and 3019), and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, the Combined Hearing Notice, the Confirmation Notice, and all related documents and notices, and in soliciting and tabulating votes on the Plan. Specifically, the Debtors provided notice of the Plan, the Disclosure Statement, the Sale Motion, and the Combined Hearing and related deadlines as set forth in sections F through N above.

(i)    Votes to accept or reject the Plan were solicited by the Debtors and their respective members, partners, representative, officers, directors, employees, advisors,

attorneys, and agents only after the Court entered the Disclosure Statement Order approving the adequacy of the Disclosure Statement pursuant to Bankruptcy Code § 1125(a).  The Debtors and their respective members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents have solicited and tabulated both on the Plan and have participated in the activities described in Bankruptcy Code § 1125 fairly, and in good faith within the meaning of Bankruptcy Code § 1125(e), and in a manner consistent with applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and other applicable laws, rules and regulations, and are entitled to the protections afforded by Bankruptcy Code § 1125(e) and the exculpation provisions set forth in Article XV of the Plan.

(iii)    The Debtors and their respective members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents have participated in good faith in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance and distribution of recoveries under the Plan and, therefore, will not be liable at any time for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of the Plan or Distributions made pursuant to the Plan, so long as such Distributions are made consistent with and pursuant to the Plan.

T.    <u>Plan Proposed in Good Faith (11 U.S.C.§ 1129(a)(3))</u>.  To be confirmed, a plan must have been "proposed in good faith and not by any means forbidden by law."[21]  A plan is proposed in good faith if there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.[22]  "The requirement of good faith must be viewed in light of the totality of circumstances surrounding the requirements of a Chapter 11 plan ...."[23]  The Plan has been proposed in good faith and not by any means forbidden by law, and complies with Bankruptcy Code § 1129(a)(3).  The Chapter 11 Cases were filed and the Plan was proposed to maximize the value of the Debtors' Estates for the benefit of the Debtors' Creditors and Interest Holders, and for no ulterior purpose.  The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code.  Specifically, the Plan (1) is designed to sell the New Interests in the most efficient and cost-effective manner, thereby maximizing the value of the ultimate recoveries for the Debtors' Creditors; and (2) culminates in a reorganization process in which the Debtors consistently have engaged in arm's-length negotiations among the entities having very different and, in many instances, competing interests, all aimed at an over-arching goal of maximizing the value of the Debtors' Estates and the recovery for Holders of Claims and Interests in accordance with the Bankruptcy Code.  All transactions contemplated by the Plan were negotiated and consummated at arm's length, without collusion and in good faith.  In determining that the Plan has been proposed in good faith, this Court has examined the totality of circumstances surrounding the formulation of the Plan, and the solicitation of votes to accept or reject the Plan.  Furthermore, the Plan

---

[21] 11 U.S.C. § 1129(A)(3).

[22] *Fin. Sec. Assurance, Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir. 1997).

[23] *Brite v. Sun Country Dev. (In re Sun Country Dev.)*, 764 F.2d 406, 408 (5th Cir. 1985); *see also In re JT Thorpe Co.*, 308 B.R. 782, 787 (Bankr. S.D.Tex. 2003).

represents extensive negotiations among the Debtors, the Pre-Petition Secured Lenders, the Purchaser and other parties-in-interest, as well as their respective legal and financial advisors.

U. Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). No payment for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been or will be made by the Debtors other than payments that have been authorized by order of the Bankruptcy Court. Except as otherwise provided under the Plan or set forth in the Confirmation Order, all such payments to be made to Professionals or other entities asserting a Professional Fee Claim for services rendered before the Effective Date will be subject to review and approval by the Bankruptcy Court.

V. Directors, Officers, Insiders, and Liquidating Trustee (11 U.S.C. § 1129(a)(5)). The Debtors have complied with Bankruptcy Code § 1129(a)(5). The persons that must be identified pursuant to Bankruptcy Code § 1125(a)(5) have been identified in the Disclosure Statement, Plan, Plan Supplement, and the Purchase and Sale Agreement. The provisions of the Plan are consistent with the interests of Claim and Interest Holders and with public policy, thereby satisfying Bankruptcy Code § 1129(a)(5). The Liquidating Trustee has been selected with the agreement and consent of the Pre-Petition Senior Secured Lenders.

W. No Rate Changes (11 U.S.C.§ 1129(a)(6)). The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency; therefore, the Debtors are not subject to any governmental regulation of rates and Bankruptcy Code § 1129(a)(6) is not applicable in these Chapter 11 Cases.

X. Best Interest of Creditors (11 U.S.C.§ 1129(a)(7)). Each Holder of an Impaired Claim or Interest that has not accepted the Plan will, on account of such Claim or Interest, receive or retain property under the Plan having a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date. The testimony and Liquidation Analysis[24] presented by the Debtors in connection with the Combined Hearing have demonstrated that the Plan is in the best interests of their creditors.

Y. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Holders of Priority Non-Tax Claims (Classes A1, B1, C1, D1, F1, G1, H1, and I1), Miscellaneous Secured Claims (Classes A4, B4, C4, D4, F4, G4, H4, and I4), and Royalty Claims (Classes B7, C7, D7, and G7) are Unimpaired in accordance with Bankruptcy Code § 1129(a)(8)(B). As such, those Classes are deemed to have accepted the Plan in accordance with Bankruptcy Code § 1126(f). The Holders of Senior Secured Claims (Classes A2, B2, C2, D2, F2, G2, H2, and I2), the UBE Junior Secured Claims (Classes A3, B3, C3, D3, F3, G3, H3, and I3), and the General Unsecured Claims (Classes A5, B5, C5, D5, F5, G5, H5, and I5) are Impaired, and as demonstrated by the Voting Certification, those Classes overwhelmingly voted to accept the Plan in accordance with Bankruptcy Code §§ 1129 (a)(8)(b) and 1126(c).

---

[24] See Disclosure Statement, Ex. H [Dkt No. 284-8].

Z.  Treatment of Allowed Administrative Priority Claims, Priority Tax and Secured Tax Claims (11 U.S.C. § 1129(a)(9)).  The Plan provides treatment for Allowed Administrative Claims and Allowed Priority Tax Claims that is consistent with the requirements of Bankruptcy Code § 1129(a)(9).  Specifically, the treatment of Allowed Administrative Claims pursuant to Article II of the Plan satisfies the requirements of Bankruptcy Code §§ 1129(a)(9)(A) and (B).  The treatment of Allowed Priority Tax Claims pursuant to Article II of the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(9)(C).  The treatment of Allowed Secured Tax Claims in the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(9)(D).

AA.  Acceptance by Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).  As set forth in the Voting Certification, the Plan has been accepted by at least one Class of Claims that is Impaired under the Plan, determined without including any acceptance of the Plan by any insider.  Specifically, the Senior Secured Claims (Classes A2, B2, C2, D2, F2, G2, H2, and I2), UBE Junior Secured Claims (Classes A3, B3, C3, D3, F3, G3, H3, and I3), and the General Unsecured Claims (Classes A5, B5, C5, D5, F5, G5, H5, and I5) are Impaired under the Plan and have overwhelmingly voted to accept the Plan.  Holders of Intercompany Claims (Classes A6, B6, C6, D6, F6, G6, H6, and I6), Preferred Stock (Class A7), and Interests (Classes A8, B8, C8, D8, F7, G8, H7, and I7) are Impaired, but are not entitled to receive or retain any property under the Plan, and, therefore, are deemed to have rejected the Plan in accordance with Bankruptcy Code § 1126(g).

BB.  Feasibility (11 U.S.C. § 1129(a)(11)).  The Plan is feasible within the meaning of Bankruptcy Code § 1129(a)(11).  The evidence proffered or adduced at the Combined Hearing with respect to feasibility, including the Financial Projections,[25] the Plan Carve Out Analysis and Plan Sources and Uses Analysis, (1) is persuasive, credible, and accurate as of the date such analyses were prepared, presented, or proffered; (2) utilizes reasonable and appropriate methodologies and assumptions; (3) has not been controverted by other evidence; (4) establishes that there is a reasonable prospect the Liquidating Trustee will be able to meet his financial obligations under the Plan; and (5) establishes that Confirmation of the Plan is not likely to be followed by the need for further financial reorganization or liquidation.  Thus, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(11).

CC.  Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)).  In accordance with Bankruptcy Code § 1129(a)(12), the Plan provides that Administrative Claims for fees payable pursuant to Section 1930 of Title 28 of the United States Code will be paid on or before the Effective Date in cash equal to the amount of such Administrative Claims.

DD.  Benefit Plans (11 U.S.C. § 1129(a)(13)).  In accordance with Bankruptcy Code § 1129(a)(13), Section 6.18 of the Plan states that, on the Effective Date, all Employee Benefit Plans will be rejected and terminated.  Any such terminations will be completed according to the terms and conditions of each Employee Benefit Plan and effected in conformity with all statutory and regulatory requirements, including any applicable notice provisions.  Any undistributed, vested benefits of the terminated Employee Benefit Plans will

---

[25] See Disclosure Statement, Ex. G [Dkt. 284-7].

be distributed to the participants as provided by statute, applicable regulations, and the provisions of such Employee Benefit Plans.

EE. <u>Payment of Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>. Because the Debtors are not required to pay any domestic support obligations pursuant to either order or statute, Bankruptcy Code § 1129(a)(14) does not apply to these Chapter 11 Cases.

FF. <u>Payment of Disposable Income to Unsecured Creditors (11 U.S.C. § 1129(a)(15))</u>. Because none of the Debtors in these Chapter 11 Cases are individual debtors, Bankruptcy Code § 1129(a)(15) does not apply to these Chapter 11 Cases.

GG. <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. Each of the Debtors is either a moneyed, business or commercial corporation, limited liability company or limited partnership. Accordingly, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(16).

HH. <u>Cramdown (11 U.S.C.§ 1129(b))</u>. The Holders of Intercompany Claims (Classes A6, B6, C6, D6, F6, G6, H6, and I6); Preferred Stock (Class A7); and Interests (Classes A8, B8, C8, D8, F7, G8, H7, and I7) are deemed to have rejected the Plan. Based on the evidence presented by the Debtors at the Combined Hearing, the Plan does not "discriminate unfairly" and is fair and equitable because (1) each dissenting Class is (a) comprised of Claims or Interests that are legally distinct from other Claims and Interests; and (b) treated substantially equally to similarly-situated classes; (2) no holder of a Claim or Interest will receive more than it is legally entitled to receive on account of its Claim or Interest; and (3) no holder of any junior Claim or Interest will receive or retain any property under the Plan on account of such junior Claim or Interest. Therefore, Bankruptcy Code § 1129(b)(2) is satisfied with respect to such Claims and Interests.

(i) <u>Intercompany Claims</u>. The treatment of Intercompany Claims (Classes A6, B6, C6, D6, F6, G6, H6, and I6) does not reflect disparate treatment of similarly situated creditors. The Liquidation Analysis demonstrates that the Holders of Intercompany Claims would receive no Distribution in a Chapter 7 Liquidation. Further, no Class junior to Intercompany Claims will receive any property under the Plan. Hence, the Plan satisfies Bankruptcy § 1129(b).

(ii) <u>Preferred Stock and Interests</u>. The Plan is fair and equitable and does not discriminate unfairly as to Preferred Stock (Class A7) and Interests (Classes A8, B8, C8, D8, F7, G8, H7, and I7). With respect to a class of equity interests, "fair and equitable" includes the requirement that either (a) each impaired equity interest receives or retains, on account of that equity interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, or the value of the equity interest, or (b) the holder of any equity interest that is junior to the equity interest of that class will not receive or retain under the plan, on account of that junior equity interest, any

property.[26] Based on the Successful Bid and the Liquidation Analysis, the value of the Preferred Stock and Interests is negative. Accordingly, the first prong of Bankruptcy Code § 1129(b)(2)(C) is satisfied. Additionally, no junior Class will receive any property under the Plan, so the second prong of Section 1129(b)(2)(C) is likewise satisfied.

II.  Only Plan Filed (11 U.S.C. § 1129(c)). The Plan filed by the Debtors is the only plan that has been filed in these Chapter 11 Cases and has been found to satisfy the requirements of subsections (a) and (b) of Bankruptcy Code § 1129. Accordingly, the requirements of Bankruptcy Code § 1129(c) have been satisfied.

JJ.  Principal Purpose (11 U.S.C. § 1129(d)). No party in interest, including, but not limited to, any governmental unit, has requested that this Court deny Confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the 1933 Act, accordingly, Bankruptcy Code § 1129(d) has been satisfied.

KK.  Burden of Proof. The Debtors have met their burden of proving the elements of Bankruptcy Code §§ 1129(a) and (b) with respect to the Plan.

## RESERVATION OF CLAIMS

LL.  Reservation of Claims and Causes of Action, including the transfer of certain known and unknown Claims and Causes of Action, as set forth in the Plan is appropriate to preserve such Claims and Causes of Action that may be held by the Debtors, the Debtors' Estates, the Liquidating Trust, and the Liquidating Trustee.

## SUCCESSFUL BID

MM.  Marketing Process and Auction. The Debtors have embarked on a comprehensive strategy to market their assets and equity interests in a manner specifically designed and implemented to ensure that the highest and best offers would be forthcoming. Specifically, the Court finds that the Debtors extensively marketed the New Interests, and the Debtors' Assets and conducted the sales process in compliance with the Bid Procedures Order.[27] The evidence shows that, before the selection of a stalking horse bidder, the Debtors, through their advisors, contacted over 300 potential buyers for the Debtors and/or their respective assets, including potential merger parties, strategic acquirers, and financial investors that the Debtors' advisors had reason to believe might be interested in pursuing a transaction to acquire the assets or equity of the Debtors. The evidence shows that over 100 of these potential purchasers were provided confidentiality agreements, of which 44 were executed and returned on behalf of potential purchasers. Bidders were provided access to a comprehensive virtual data room of information, data and records regarding the Debtors and their assets upon execution of the confidentiality agreements. The evidence further shows that the Debtors received five (5) indications of interest/term sheets during this process. Ultimately, the Debtors chose NBI Services, Inc. as the stalking horse bidder ("NBI" or the

---

[26] 11 U.S.C. § 1129(b)(2)(C).
[27] Dkt. No. 182.

"Stalking Horse") and requested that the Court approve both the Stalking Horse SPA and the Bid Procedures, which the Court approved in the Bid Procedures Order. The Debtors did not receive any Qualified Bids (as defined in the Bid Procedures) in addition to the Stalking Horse Bid of NBI. Consequently, the auction contemplated pursuant to the Bid Procedures was canceled, thereby rendering NBI the Successful Bidder. The totality of this evidence convinces the Court that the Debtors completed a full marketing and auction process in accordance with the Bid Procedures and all other requirements of the Bankruptcy Code and other applicable law. The Debtors exercised their valid business judgment in identifying Qualified Bids, conducting the auction process, and identifying the Successful Bidder, all in accordance with the Bid Procedures and all other requirements of the Bankruptcy Code and other applicable law. The Debtors' marketing process occurred over three months. Based on the testimony, this Court finds that this time period is an adequate marketing period for these Debtors and their businesses, including the Debtors' oil and gas assets. Potential buyers had more than adequate time to conduct due diligence, vet the Debtors' Assets and businesses, and discuss proposals with the Debtors' management and professionals. Given the scope, manner and length of the marketing process, the Bankruptcy Court finds that this process has yielded fair value for the Debtors. The Court further finds that additional marketing of the assets or the Debtors would not likely lead to any higher and better offers, and thus, additional marketing of the assets and/or the Debtors would not be in the best interest of the Estates. Accordingly, the Court finds that the auction process should be and is appropriately closed, pending consummation of the Plan.

NN.    Successful Bid. The Successful Bid constitutes the highest and best offer for the Acquired Property and the Debtors' determination of same is a valid and sound exercise of the Debtors' business judgment. The terms of the Successful Bid are reflected in the Stalking Horse SPA.[28]

OO.    Good Faith of Debtors and Purchaser. The Debtors and Purchaser have acted in good faith with respect to the Transaction. Additionally, the Purchaser is a good-faith purchaser of the Debtors' Acquired Property and is entitled to the protections of Bankruptcy Code § 363(m). The Purchaser and its respective directors, officers, employees, managers, members, attorneys, affiliates, agents, and professionals participated in a robust marketing process, complied with the Bid Procedures Order and have acted in the auction in good faith, without collusion and with the honest intent to win the auction with the highest and best bid.

PP.    Arm's Length Sale. The Purchase and Sale Agreement was negotiated, proposed, and entered into by the Debtors and Purchaser without collusion and in good faith, and was the result of arm's length bargaining positions as between the Debtors and the Purchaser, both represented by independent counsel and advisors. Neither the Purchaser nor any of its affiliates or their representatives is an "insider" of the Debtors, as that term is defined in Bankruptcy Code § 101(31), and no common identity of directors or controlling shareholders exists between the Purchaser and any of the Debtors. Neither the Debtors, the Purchaser, nor any of their respective representatives have engaged in any conduct that would cause or permit the Transaction to be avoided. The Successful Bid constitutes fair value for the Acquired Property. The terms and

---

[28] Dkt. No. 157. The Stalking Horse SPA is the same as the Purchase and Sale Agreement, as NBI has been deemed to have submitted the Successful Bid.

conditions of the Purchase and Sale Agreement are fair and reasonable and shall not be avoided nor are they subject to avoidance. The Purchaser has not acted in a collusive manner with any person and the Successful Bid was not controlled by any agreement among the bidders.

QQ.   <u>Authority; Consents</u>.   The Debtors (i) have full corporate power and authority to execute and deliver the Purchase and Sale Agreement and all other documents contemplated thereby; (ii) have all of the corporate power and authority necessary to consummate the Transaction; and (iii) have taken, or will take, all corporate action necessary to authorize and approve the Purchase and Sale Agreement and the consummation of the Transaction. No consents or approvals, other than those expressly provided for in the Purchase and Sale Agreement or the Plan, are required for the Debtors to consummate the Transaction.

RR.   <u>Highest and Best Offer</u>.   The Successful Bid is (i) fair and reasonable, (ii) is the highest and best offer for the Acquired Property, (iii) constitutes reasonably equivalent value, fair value, and fair consideration for the Acquired Property under the Bankruptcy Code, applicable federal law and applicable state law, including, but not limited to, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and all applicable laws of the United States, any territory, possession, or the District of Columbia; and (iv) will provide greater recovery for the Debtors' Estates than would be provided by any alternative transaction. The Debtors' determination that the Successful Bid constitutes the highest and best offer for the Acquired Property constitutes a valid and sound exercise of the Debtors' business judgment.

SS.   <u>No Fraudulent Transfer</u>.   The Purchase and Sale Agreement was not entered into for purposes of hindering, delaying, or defrauding Creditors of any of the Debtors. The Transaction does not constitute a fraudulent transfer or fraudulent conveyance under the Bankruptcy Code, or the applicable laws of the United States, any territory, possession, or the District of Columbia. The Purchaser acted in good faith and without any intention to enter into any transaction that would be fraudulent as to the Debtors and any Creditors or parties-in-interest, and will pay adequate consideration and reasonably equivalent value.

TT.   <u>Free and Clear</u>.   The Debtors may sell the New Interests Free and Clear pursuant to the terms of the Plan. All Holders of Interests or Claims that did not object to the Transaction are deemed to have consented to the Transaction. The sale of the New Interests is or will be a legal, valid and effective transfer of the New Interests to the Purchaser that will vest the Purchaser with title to, and all other right, title and interest in, the Equity Interests on the Effective Date Free and Clear.

## SECURITIES FINDINGS AND CONCLUSIONS/EXEMPTIONS

UU.   <u>Securities Issuance</u>.   The Reorganized Debtors and the Liquidating Trust constitute or will constitute a "successor" and a "newly organized successor" to the Debtors under the Plan solely for purposes of Bankruptcy Code §§ 1145 and 1125(e), and the Debtors have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, sale, issuance and distribution of the New Interests pursuant to the Plan. The findings of fact and conclusions of law in this paragraph UU shall be binding upon all parties to these Chapter 11 Cases, the Debtors, the Reorganized Debtors, the Liquidating Trust,

the Liquidating Trustee, and all other federal, state, and local regulatory enforcement and other agencies.

VV.   <u>Exemptions from Recording, Stamp, and Similar Taxes (11 U.S.C. § 1146(a))</u>.   In accordance with Bankruptcy Code § 1146(a), any transfers from a Debtor to any Person pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment.

## RELEASES AND LIMITATION ON LIABILITY

WW.   <u>Settlement; Releases and Discharges</u>.   Pursuant to Bankruptcy Code § 1123 and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of Claims, Causes of Action and controversies that a Holder of any Claim may have with respect to any Allowed Claim or any Distribution to be made on account of such Allowed Claim.  The entry of these Findings of Fact and Conclusions of Law and the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Causes of Action and controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and the Holders of such Claims and is fair, equitable, and reasonable. In accordance with the Plan and subject to the restrictions in the Confirmation Order and the Plan, including but not limited to the restrictions set forth in § 11.01 of the Plan, and pursuant to Bankruptcy Code § 1123 and Bankruptcy Rule 9019(a), without any further notice or action, order, or approval of the Bankruptcy Court, the Debtors may compromise and settle Claims against them and Causes of Action against other Persons, in their sole and absolute discretion, and after the Effective Date, such right shall pass to the Reorganized Debtors with respect to Vested Assets, and to the Liquidating Trust, and the Liquidating Trustee, as applicable, with respect to the Liquidating Trust Assets (subject to the Liquidating Trust Agreement, the Plan and the Confirmation Order).

XX.   <u>Release, Injunction, and Exculpation</u>.   In accordance with Bankruptcy Code § 1123(b)(3), the Plan provides for certain settlements, exculpations, limitations of liability, and injunctions, as well as for the retention of certain Causes of Action (including certain Avoidance Actions).  Pursuing any such Claims against the Released Parties and Related Persons is not in the best interest of the Debtors' Estates and various constituencies as the costs involved likely would outweigh any potential benefit from pursuing such Claims. The release, injunction, and exculpation provisions are an integral part of the Transaction and the settlements embodied in the Plan, were negotiated at arm's length, and the Debtors are receiving appropriate consideration for the Plan settlements.  The release, injunction, and exculpation provisions are fair, equitable and reasonable, and the failure to affect those provisions would impair the Debtors' ability to confirm the Plan.  Accordingly, relating to the Released Parties and the Related Persons, the compromises and settlements embodied in the release, injunction, and exculpation provisions described in Article XV of the Plan are approved, and the release, injunction, and exculpation provisions generally described in Article XV of the Plan, which provisions are wholly justified under the circumstances of these Chapter 11 Cases, are approved.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

YY. <u>Assumption of Executory Contracts and Unexpired Leases</u>. The assumption of the Desired 365 Contracts and rejection of other executory contracts and unexpired leases pursuant to the Plan, these Findings of Fact and Conclusions of Law, and the Confirmation Order are reasonable exercises of the Debtors' business judgment and are in the best interests of the Debtors and their Estates. The respective amounts set forth as set forth in **Exhibit A** attached to the Confirmation Order are the maximum Cure Costs necessary under Bankruptcy Code §§ 365(b)(1)(A) and (B) to cure all defaults under the Desired 365 Contracts and pay all actual pecuniary losses to the respective counterparties to the Desired 365 Contracts resulting from all such defaults. Reservation of Cash or payment of such Cure Costs will be made as set forth herein, and the Reorganized Debtors, the Purchaser, the Liquidating Trust and/or the Liquidating Trustee have provided adequate assurance of future performance under the Desired 365 Contracts.

## PURCHASER IS NOT SUCCESSOR TO THE DEBTORS

ZZ. Save and except as needed to comply with Bankruptcy Code § 1145, the Purchaser and its affiliates, successors, or assigns are not, as a result of actions taken in connection with the Plan or the Transaction, successors to any of the Debtors or a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors.

## MISCELLANEOUS PROVISIONS

AAA. <u>Best Interests of Persons</u>. Confirmation of the Plan is in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and all other parties in interest.

BBB. <u>Issuance of New Interests</u>. The issuance and distribution of the New Interests in accordance with the provisions of the Plan are reasonable and necessary.

CCC. <u>Vesting of Vested Assets</u>. The vesting of the Vested Assets in the Reorganized Debtors, on the Effective Date, in accordance with the Plan, is reasonable and necessary and done in accordance with applicable state law and applicable provisions of the Bankruptcy Code, including Bankruptcy Code § 1123(b)(3).

DDD. <u>Transfer of the Liquidating Trust Assets</u>. The Debtors' transfer of the Liquidating Trust Assets (including, but not limited to, the Excluded Causes of Action) to the Liquidating Trust, as applicable, on the Effective Date in accordance with the Plan and the Liquidating Trust Agreement is reasonable and necessary and made in accordance with applicable state law and applicable provisions of the Bankruptcy Code, including Bankruptcy Code § 1123(b)(3).

EEE. <u>Plan Documents Valid and Binding</u>. All other documents reasonably necessary to implement the Plan and the Transaction have been negotiated in good faith and at arm's length, shall be, upon execution on or after the Effective Date, valid, binding, and enforceable agreements, and are in the best interests of the Debtors and their Estates and have been negotiated in good faith and at arm's length.

## PLAN CONFIRMATION STANDARDS

FFF.   Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in Bankruptcy Code § 1129.

## RETENTION OF JURISDICTION

GGG.   The Bankruptcy Court may properly, and upon the Effective Date, shall retain jurisdiction over the matters set forth in Article XIV of the Plan and Bankruptcy Code § 1142.

###END OF ORDER###